UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY

| | |
|---|---|
| LARRY and TAMMY KOLLER, ) | |
| ) | |
| Plaintiffs, ) | Case No. 4:10-cv-00261-JTM |
| ) | |
| v. ) | |
| ) | |
| LIBERTY MUTUAL FIRE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO LIBERTY'S MOTION TO STRIKE TESTIMONY AND OPINIONS OF EXPERT WITNESSES TRUETT SWAIM, M.D.; MICHAEL DREILING AND JOHN WARD, Ph.D.

COME NOW Plaintiffs Larry and Tammy Koller, by and through their undersigned counsel, and for their Response in Opposition to Defendant Liberty Mutual Fire Insurance Company's ("Liberty") *Motion to Strike Testimony and Opinions of Expert Witnesses Truett Swaim, M.D., Michael Dreiling and John Ward, Ph.D.* respectfully request that this Court deny said motion and further states as follows:

### I. OVERVIEW.

Liberty filed its *Motion to Strike* on the deadline for the submission of *Daubert* motions. Most, if not all, of Liberty's challenges are not based on *Daubert* but are instead more along the lines of *motions in limine* seeking to limit his testimony. To the extent that Liberty's motion is premature, it should be denied at this time by the Court.

### II. INTRODUCTION.

Plaintiffs timely disclosed retained damages expert witnesses *Truett Swaim, M.D., Michael Dreiling and John Ward, Ph.D.* Liberty now asks this Court to completely exclude the

opinions of Dr. Truett Swaim and Michael Dreiling[1] and to prohibit Dr. Ward[2] from offering testimony on past or future lost income.[3] Liberty does not recognize the opinions offered by Dr. Swaim that all of the medical care and treatment administered to Mr. Koller was reasonable and necessitated by the December 23, 2008 accident and that the medical charges were reasonable and customary. Similarly, Liberty does not recognize the opinions offered by Dr. Swaim concerning the future medical treatment that Mr. Koller will require as a result of the accident. This future medical treatment includes left knee arthroscopy and hardware removal of $22,000; future medical expenses of total left knee replacement of $40,000; future medical expenses of lumbar surgery of $40,000). These opinions were made to a reasonable degree of medical certainty and should <u>not</u> be excluded by this Court.

Liberty does not advance any argument that *Truett Swaim, M.D., Michael Dreiling and John Ward, Ph.D.* are not qualified to offer the opinions articulated in their written reports. The qualifications of all three are abundantly clear from their respective curriculum vitas. All three experts have provided testimony that is relevant and reliable, satisfying the *Daubert* and Rule 702 standard for admissibility. Each expert properly considered all relevant facts and have formed admissible opinions which will aid the trier of fact in its determination of the nature and extent of Larry Koller's injuries and the amount of damages to be awarded. Liberty's motion lacks legal and factual support and should be denied.

### III.     FACTUAL BACKGROUND.

Each expert relied on sufficient data and took into consideration all relevant facts. Dr. Swaim reviewed Larry Koller's post-accident and pre-accident medical records, personally

---

[1] Mike Dreiling opined that Mr. Koller is essentially and realistically unemployable in the open labor marker if he would follow medical advice and restrictions and taking into account the other vocational factors for his profile
[2] Dr. Ward opined that Mr. Koller's past and future economic loss was between $508,963 and $883,483.
[3] Dr. Ward also opined that Larry Koller suffered past and future economic loss due to lost household services, which at the time that he authored his report totaled $101,112. This opinion is not the subject of Liberty's motion.

examined Larry Koller and issued a detailed written report and subsequent addendum to that report, all of which was provided to Liberty prior to Dr. Swaim's deposition. All of Dr. Swaim's opinions were made to a reasonable degree of medical certainty after his consideration of all applicable facts.

Likewise, Mike Dreiling reviewed the medical reports issued by Dr. Swaim and also evaluated Mr. Koller in person prior to forming an opinion and issuing a report regarding Larry Koller's vocational limitations. Mr. Dreiling administered vocational testing, taking into consideration Larry Koller's vocational, medical, and educational background and relied on the results of that testing to form his opinions in this case. Liberty was offered an opportunity to depose Mr. Dreiling but elected not to take his deposition. Similarly, Liberty elected not to take the deposition of Dr. John Ward.

Plaintiffs' retained expert witnesses have not misstated the factual posture of this case. The experts freely recognized and took into full consideration the fact that Mr. Koller continued to work for YRC, Inc. following the accident in question. Mr. Koller candidly acknowledged that he would continue to work for YRC, Inc. as long as he could in order to provide for his family. He also explained that he was having difficulty performing his daily tasks and that he was not sure how much longer he would be able to work. Unfortunately, Mr. Koller was relieved of all his duties with YRC, Inc. permanently as of May 1, 2011. See Exhibit A.

Taking into consideration these facts and Larry Koller's medical limitations, Dr. Swaim concludes that despite Larry Koller's ability to work following the accident, his left knee traumatic arthritic condition will impair his ability to perform the essential duties of a truck driver, including the ability to pass a DOT physical. In his deposition, Dr. Swaim explained that there is a difference between what a person can do physically and what they should do

medically. Dr. Swaim's medical restrictions consider efforts to delay the need for a total knee replacement as long as possible.

Liberty's effort to exclude Dr. Swaim's testimony because his is not a treating physician is without merit. There is no rule, requirement and/or doctrine that provides that only treating physicians can offer opinions about future medical restrictions. Dr. Swaim is board certified by the National Board of Medical Examiners. He was an orthopedic surgery engaged in private practice from 1983 through 1998. Dr. Swaim's opinions, Mike Dreiling's opinions and Dr. John Ward's opinions are relevant and reliable and should not be excluded by this Court.

## IV. LEGAL STANDARD.

The implementation of Rule 702 of the Federal Rules of Evidence reflects "an attempt to liberalize the rules governing the admission of expert testimony. **The rule is generally one of admissibility rather than exclusion.**" *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (Emphasis added) (holding that district court's exclusion of expert testimony was an abuse of discretion). The opinions offered by Plaintiffs' damages experts in this case satisfy the requirements of (1) relevance, (2) qualification and (3) reliability. The Eighth Circuit has repeatedly instructed that the "weight and credibility of this evidence is left to the trier of fact." *Jenson v. Eveleth Taconite Company*, 130 F.3d 1287 (8th Cir. 1997). Stated another way, "…Any weaknesses in the factual underpinnings of [an expert's] opinion go to the weight and credibility of his testimony, not its admissibility." *Hurst v. U.S.*, 882 F.2d 306, 311 (8th Cir. 1989). This concept was more recently articulated by the Eight Circuit in *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955-56 (2007) as follows:

> As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination…An expert's opinion should be excluded only

> if that 'opinion is so fundamentally unsupported that it can offer no assistance to the jury.'
>
> *Id.* (Internal quotations and citations omitted).

The United States Supreme Court adopted this view from the outset in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) by noting that "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." "**Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility.**" *McIntosh v. Monsanto Co.,* 462 F.Supp.2d 1025, 1032 (E.D. Mo. 2006) (citing *Clark v. Heidrick,* 150 F.3d 912, 915 (8th Cir. 1998).

Liberty's reliance on *Presley v. Lakewood Engineering & Manufacturing Co.*, 553 F.3d 638, 643 (8th Cir. 2009) is misplaced. In *Presley*, the court examined whether a fire expert should have been excluded for lack of sufficient testing. *Presley* does not have any bearing on the testimony and opinions that are the subject of Liberty's motion. Plaintiffs' experts developed and enhanced their expertise through years of training, education and experience. Each expert applied their expertise to the facts of this case but did not develop their expertise for this case in particular. The opinions and testimony offered by Plaintiffs' experts satisfy the requirements of *Daubert* and Federal Rule 702 and should be properly admitted.

## V. ARGUMENT AND AUTHORITIES.

The opinions and testimony from Dr. Swaim, Mr. Dreiling and Dr. Ward, which Liberty now asks this court to strike, are based on arguments Liberty asserts with respect to the factual basis of their testimony. Challenges of this nature go to the weight and credibility of the testimony and do not warrant exclusion. *Synergetics,* at 955-56. Liberty's motion should be denied.

5

A. **Dr. Swaim's opinions about Mr. Koller's work restrictions and future ability to maintain gainful employment as a truck driver are reliable and based on the relevant facts of the case.**

Liberty's factual arguments cloud the true focus of *Daubert* and the standard for admissible expert testimony. The heart of this analysis is whether the opinions are relevant and reliable. *Jaurequi v. Carter Manufacturing Company, Inc.,* 173 F.3d 1076, 081-82 (8th Cir. 1999). Liberty fails to provide a legitimate legal basis to challenge the reliability or relevance of Dr. Swaim's testimony. Instead, Liberty has cherry picked portions of Dr. Swaim's testimony in an effort to support its unfounded allegations that Dr. Swaim "ignores" Mr. Koller's employment following the accident. This argument is not only fallacious but is not a reasonable basis to exclude Dr. Swaim's testimony.

Dr. Swaim is not only aware of Mr. Koller's employment but specifically addressed this fact in his expert report and deposition. Dr. Swaim's opinion about Mr. Koller's work restrictions are based on his review of both pre-accident and post-accident medical records (including MRI and X-ray films), his independent medical examination of Mr. Koller and his experience and knowledge in the field of medicine. In his deposition, Dr. Swaim further addressed Larry Koller's ability to work following the accident and the significance of that fact in reaching his ultimate conclusion.

> Q. Now, going back into your original report you have got some restrictions I want to talk about and when a physician issues or sets out restrictions for a patient, what is the purpose of that?
>
> A. The purpose varies, it is usually to prevent further injury or recurring injury or progression of some problem or it can represent the actual capacity someone has to perform the activities.
>
> (Dr. Swaim's Depo Transcript, p. 57, lns. 6-15).

> **A lot of people can do things beyond the level that they should and in this particular scenario he has got an arthritic condition of his knee, posttraumatic arthritic condition of his knee**. When I saw him, he was 54 years old or 56 and he is still 54 years old and **idealistically you would want to hold off on having a total knee replacement as long a possible and to do that is to minimize impact loading as much as possible because impact loading causes progression of arthritic changes** and so the concept of him limiting how much he lifts, the concept of limiting bending, stooping, kneeling, crawling, that kind of thing are not necessarily things he cannot do, they are things that he should not do because of an attempt to prolong the necessity for total knee replacement and to explain that is total knee replacements are not things you put in and they are forever and you do great. With time they will loosen, every one of them loosens, they loosen between the bone and whatever interface the bones with, if there is bony end growth, it is an interface with metal, if it is cemented in, it is interfaced with cement, and each time you have to have a revision of total joint replacement, the complication rate goes up, the outcome goes, down, difficulty of surgery is up.
>
> (Dr. Swaim's Depo Transcript, p. 66, ln. 5 through p. 67, ln. 7).

In fact, Liberty's counsel specifically asked Dr. Swaim about Mr. Koller's ability to work following the accident and how this fact affects his ability to work in the future and Dr. Swaim's opinions.

> Q. Right. So why does the fact he has been doing it, how does that impact his ability to do it on an ongoing basis?
>
> A. Well, the -- it is that that is what he has been doing and so maybe the word would have been better employment period, gainful employment period might have been the better term, but it doesn't -- **because he has been doing it doesn't specifically mean that has any effect on his ability to do it in the future based on his condition.** What he has already done, he has done.
>
> Q. I am trying to figure out that paragraph states, His functional limitations in combination with, so as it is written those appear to be some kind of factor?
>
> A. Here is what I am trying to say by that, here is what I am trying to say, he has got some back discomfort and he has got a right -- a

7

left knee condition where **<u>he is developing arthritis or already developed arthritis and that is progressively going to get worse. It is going to eventually result in him having difficulties performing his occupation</u>** and if you look at page 10 under prognosis, last sentence it says – or second to last sentence it states, The combined effects of his left knee condition, lumbar condition and left sacroiliac dysfunction will impede his ability to pass the DOT physical.

(Dr. Swaim's Depo Transcript, p. 58, ln. 23 through p. 59, ln. 25).

As evidence above, Dr. Swaim not only acknowledged Mr. Koller's ability to work following the accident but used this fact in reaching his ultimate opinions. Therefore, Liberty's argument that Dr. Swaim "ignores" this fact is unsubstantiated and their motion should be summarily denied.

Moreover, Liberty's reliance on the toxic tort case of *Marmo* is improper. In *Marmo*, the district court allowed Dr. Ammann to testify that Marmo's alleged injuries were "consistent with" hydrogen sulfide exposure but precluded him from offering an opinion on causation. 457 F.3d 748, 757 (8th Cir. 2006). Marmo alleged injuries based on exposure to hydrogen sulfide from a wastewater treatment lagoon at a beef processing plant. Dr. Ammann interviewed Marmo but did not inquire about other toxic exposures or prior medical history. *Id.* at 758. Dr. Ammann did not exclude confounding factors, leaving open the possibility of competing causes of the disease, which raised questions about the competency of his testimony. Most importantly, Dr. Ammann admitted that the causation standard that he testified to was much lower than the standard for medical causation. *Id.*

Unlike *Marmo*, Dr. Swaim reviewed pre-accident and post-accident medical records. In addition, Dr. Swaim obtained a questionnaire from Mr. Koller for purposes of gaining a more complete medical history. Unlike *Marmo*, <u>Dr. Swaim testified that all of his opinions were made to a reasonable degree of medical certainty</u>. (See Exhibit B, Swaim Deposition, p. 65, 76-67).

The differences between Dr. Swaim's opinions in the pending automobile personal injury case and the opinions offered by the doctor in the toxic tort exposure case of *Marmo* are like night and day. *Marmo* does not support excluding Dr. Swaim's opinions.

Liberty's continued attempt to pluck lines from a deposition without considering Dr. Swaim's overall opinions in this case should be view with skepticisms by this Court. Dr. Swaim formed opinions about Mr. Koller's ability to maintain gainful employment as a truck driver based on his physical examination of Mr. Koller and based on his knowledge and understanding of the injury at issue. These opinions are admissible and are based upon more than sufficient data and information to assist the jury in evaluating Mr. Koller's injury.

Liberty's continued effort to draw a distinction between a treating doctor and a retained medical doctor for purposes of determining the admissibility of expert opinions should be rejected by this Court. There is no recognized doctrine that supports making such a distinction. Furthermore, any concerns that Liberty has about Dr. Swaim's medical practice is a topic for cross examination, not exclusion.

Liberty's criticisms of Dr. Swaim's testimony is classic cross examination that goes to the weight and credibility of his testimony rather than its admissibility. For example, Dr. Swaim's discussion about the use of functional capacity evaluations does not impact the admissibility of his opinions. Liberty could have requested a functional capacity evaluation but did not. Liberty requested and was permitted to conduct an orthopedic IME of Mr. Koller and has disclosed the report of Dr. James Whitaker. Additionally, *In re Aluminum Phosphide Antitrust Litig.*, 893 F.Supp. 1491, 1507 (D. Kan. 1995) has no practical application in this case because it concerns a challenge to opinions formed by an economist about the proper measure of damages in an antitrust case. Liberty's motion should be denied.

### B. Liberty mischaracterizes the opinions of Mike Dreiling and Dr. John Ward. These opinions are reliable, relevant, and admissible.

Liberty's argumentative allegations of boot strapping, "glaring" defects, and windfall damages do not advance its argument. In reality, Liberty simply disagrees with the conclusion of Plaintiffs' experts. However, this disagreement does not warrant exclusion. Furthermore, it is a longstanding and accepted practice for an expert to rely on portions of another expert's report. *Larson v. Kempker,* 414 F.3d 936 (8th Cir. 2005). The 8th Circuit clarified the liberal approach to expert testimony by stating,

> [E]xpert[s] are permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge – a rule which represents a most pervasive manifestation of the common law – instance upon the most reliable sources of information…. **An expert may extrapolate from data supplied by other experts.**

*Id.* at 941 (emphasis added).

Liberty incorrectly states that Mike Dreiling's opinion did nothing more than review the opinions set forth in Dr. Swaim's report. This argument completely ignores the vocational testing administered to Mr. Koller and the vocational history of Mr. Koller, which was relied on by Mike Dreiling in his written report. This analysis also ignores that the entire work up of Dr. Swaim and Mike Dreiling was relied on, in part, by Dr. John Ward along with historical wage data and an interview with Mr. Koller to form his opinions in this case. Both Mr. Dreiling and Dr. Ward properly recognzie the facts in this case. After all, Mike Dreiling stated in his report as follows:

> He continues to work at his job with the ongoing pain and discomfort, as he realizes that with his educational background and work history, it would be very difficult for him to find employment within the medical restrictions advised that would reimburse him at the same level of salary and fringe benefits that he has been accustomed to receiving since working for Yellow Freight.

> (Liberty's Exhibit C, Dreiling Report, p. 5).

> This individual is continuing to perform work in the labor market that requires him to exceed the medical restrictions, as he realizes that pursuing other work within the medical restrictions would result in considerable vocational difficulties, in terms of finding other work and earning wages similar to what he has been accustomed to earning.

> (Liberty's Exhibit C, Dreiling Report, p. 8).

Vocational experts and economist routinely rely on input from medical doctors when forming their opinions. The holding in *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 981-82 (8th Cir. 2010), is easily distinguished from the facts in this case. Like *Marmo*, *Barrett* is a toxic tort case. The court in *Barrett* did not allow a clinical psychologist with no training in toxicology, that had never evaluated a patient exposed to hydrogen sulfide gas, to rely on the opinions of a different doctor excluded as excessively speculative to support her opinion concerning the source and concentration of the exposure. *Id.* The opinions offered by Mike Dreiling and Dr. John Ward evaluating the impact on Mr. Koller's injury from a vocational and economic perspective do not rely on excluded testimony that is excessively speculative. Any challenges that Liberty has to these opinions are the proper subject of cross examination, not a motion to strike.

### C. The opinions offered by Dr. Swaim, Mike Dreiling and Dr. Ward should not be excluded in any capacity by Rule 403.

Liberty offers no authority to justify excluding the opinions of Dr. Swaim, Mr. Dreiling, and Dr. Ward based on Rule 403 balancing. The opinions of these experts are highly probative and will assist the jury in fully and properly evaluating the medical, vocational and economic impacts of Mr. Koller's injury. Contrary to Liberty's assertions, the basis for this testimony is not "unforeseen future possibilities", but rather is the reality of Mr. Koller's debilitating condition. Furthermore, Dr. Swaim's conclusions are made to a reasonable degree of medical

certainty, not mere possibility. Likewise, the opinions of Mike Dreiling and Dr. Ward were made to reasonable degree of certainty in their respective fields.

The opinions from Plaintiffs' damage experts about Mr. Koller's future employment are highly relevant in this case. Mr. Koller's employment with YRC, Inc. permanently ended on May 1, 2011. Dr. Swaim's opinion that Mr. Koller will no longer be able to maintain gainful employment as a truck driver is based on his evaluation of the injury and his knowledge and experience in evaluating traumatic, acute orthopedic injuries. Dr. Swaim's inability to calendar the exact date where Mr. Koller's injury will preclude him from working is intellectually honest, logical and appropriate.

The proper method for Liberty to challenge the opinions offered by Plaintiffs' damages experts is through cross examination, not exclusion based on Rule 403. The testimony of Plaintiffs' will assist the jury in evaluating the serious and lasting impact of Mr. Koller's injuries. Liberty's factual arguments do not justify excluding these opinions. Liberty's motion should be denied.

## VI.   CONCLUSION.

The opinions set forth in the reports of Dr. Truett Swain, Mike Dreiling and Dr. John Ward are reliable, relevant, and admissible. This testimony is relevant and will assist the trier of fact in their evaluation of the extent and nature of Plaintiffs' damages. Liberty's motion to exclude this testimony and these opinions should be rejected by this Court.

Respectfully submitted,

**WALDECK, MATTEUZZI & SLOAN, P.C.**

*/s/ Matthew J. Brooker*
_____
Michael D. Matteuzzi, MO Bar #32891
(mmatteuzzi@wmskc.com)
Matthew J. Brooker, MO Bar #58794
(mbrooker@wmskc.com)
11181 Overbrook, Suite 200
Leawood, Kansas 66211
P: 913-253-2500 / F: 913-253-2501
**ATTORNEYS FOR PLAINTIFFS**

## Certificate of Service

The undersigned certifies that on the 16th day of May, 2011, the foregoing was electronically filed with the United States District Court for the Western District of Missouri using the CM/ECF system which sent notification of such filing to the following:

> Bruce A. Moothart  MO Bar #45517
> (bruce.moothart@huschblackwell.com)
> Ryan J. Watson  MO Bar #51233
> (ryan.watson@huschblackwell.com)
> Husch Blackwell LLP
> 4801 Main Street, Suite 1000
> Kansas City, MO 64112
> P: 816.983.8000 / F: 816.983.8080
> **ATTORNEYS FOR DEFENDANTS**

*/s/ Matthew J. Brooker*
_____
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SIGNING:

The original of the foregoing document was signed by Matthew J. Brooker and is being kept in the client files of Waldeck, Matteuzzi & Sloan, P.C.